ment, but, the application for judgment being before the court at Special Term, Part I, as required. by the rules of this department, after the computation, that court having the application for judgment before it undetermined, and the amount due plaintiff having been ascertained, it was proper for that court to enter the appropriate judgment. We think, therefore, that the plaintiff was entitled to have the judgment entered.

[2] We think, however, that the proper practice for the relator was to have asked the justice presiding to make an order denying his application for judgment, and to have appealed from that order; and under the circumstances, as we are satisfied that the learned justice will, on this expression of our views, grant the proper judgment, we refrain from directing mandamus, and will simply dismiss the proceeding without costs.

Settle order on notice. All concur.

LEMBECK & BETZ EAGLE BREWING CO. v. ROSENSTEIN.

(Supreme Court, Appellate Division, Second Department. June 4, 1915.)

1. DEEDS ⊖⇒138—RESERVATIONS AND EXCEPTIONS—EFFECT ON TITLE.
    Where a deed contains an exception, title thereto is retained in the grantor; but, where the deed contains a reservation, the fee passes to the grantee.
    [Ed. Note.—For other cases, see Deeds, Cent. Dig. § 456; Dec. Dig. ⊖⇒138.]

2. EASEMENTS ⊖⇒14—RESERVATIONS AND EXCEPTIONS.
    An easement for a right of way, newly created, cannot be made the subject of an exception or reservation, since it is neither a parcel of the thing granted, nor does it issue therefrom.
    [Ed. Note.—For other cases, see Easements, Cent. Dig. § 40; Dec. Dig. ⊖⇒14.]

3. DEDICATION ⊖⇒55—RESERVATIONS AND EXCEPTIONS—TITLE.
    In a conveyance of land, where a strip is retained as a public highway, an easement only is created, and the fee to the land vests in the grantees.
    [Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 98, 99, 101, 102; Dec. Dig. ⊖⇒55.]

4. HIGHWAYS ⊖⇒79—ABANDONMENT—PRESUMPTIONS.
    An easement over private land for highway purposes may be lost by a nonuser; an extinguishment thereof, by abandonment for a long time, being presumed.
    [Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 279, 281–287; Dec. Dig. ⊖⇒79.]

5. HIGHWAYS ⊖⇒79—ABANDONMENT—NONUSER—STATUTORY RESTRICTIONS.
    Where a strip eight rods wide was reserved from an ancient patent for highway purposes, and by statute the strip was subsequently limited to three rods, there was an abandonment of user as to the remaining five rods, which reverted to the patentee.
    [Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 279, 281–287; Dec. Dig. ⊖⇒79.]

6. HIGHWAYS ⊖⇒79—DISCONTINUANCE—ABANDONMENT.
    From an ancient patent was excepted a strip eight rods wide for the use of a highway. Subsequently by statute such highway was restricted to a width of three rods. It appeared that it would have been impracti-

cable to have constructed a road of a greater width. The road actually constructed did not in all· respects comply ,with the description of the highway reserved in the patent. *Held*, that the acceptance of the new road in place of the old was conclusive as to the abandonment of the old.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 279, 281–287; Dec. Dig. ☞79.]

Appeal from Special Term, Richmond County.

Action by the Lembeck & Betz Eagle Brewing Company against John H. Rosenstein. From a judgment for defendant, plaintiff appeals. Affirmed.

The following was the opinion of Kapper, J., at Special Term:

In three patents, two granted by Gov. Andros, dated, respectively, December 1, 1680, and December 2, 1680, and the third by Gov. Dongan, dated March 17, 1685, of lands in Richmond county, within one of which the premises are situated, and the title to which the plaintiff, as vendee under a contract of sale, objects, the clause appears in each patent, after describing the areas granted, substantially as follows: "There being eigh rodd in breadth by the waterside left for a highway." The plaintiff's objection to the title is that by these patents there was excepted from the grant a. strip eight rods in width, which now constitutes a public highway, the title to which is in the state of New York. The question is important in that it affects a great number of parcels of land upon Staten Island, all of which have been dealt with for an indefinitely long period as wholly unaffected by the clauses in the patents referred to. Much of the discussion in plaintiff's behalf is devoted to the claim that this ·eight-rod strip constitutes an exception to the grant or patent whereby title .thereto remained in the crown and subsequently in the state by virtue of its succession to the rights of the crown. The reading of the descriptions in the patents convinces me that the eight-rod strip was not excepted, but that, .at best, a public easement was reserved therein for the purposes of a highway. Without particularizing the descriptions of the lands, as set forth in the patents, it suffices to say that they all run to and along the waterside, whilst the clauses regarding the eight-rod strip expresses it as "left by the waterside," and hence the eight-rod strip was within the description of the area granted ·by the patents.

[1] The broad distinction between exceptions and reservations in deeds, for :the purpose of determining ownership in land, retains the title in the grantor, where the deed contains an exception, but passes the fee to the grantee where there is a reservation.

[2] But, according to the strict rules of law, an easement, such as a right of way newly created, cannot be made the subject of an exception or reservation, because "it is neither parcel of the thing granted, nor is it issuing out of the thing granted; the former being essential to an exception and the latter to .a reservation." Jones on Easements, § 89.

[3] In this case a right of public passage only was intended, as I view it, and that therefore vested the fee in the patentees, subject to public easement. As was said in Bradley v. Crane, 201 N. Y. 25, 94 N. E. 363: "There is nothing inconsistent in the public use of land as a road and the retention by the landowners of the fee, subject to the easement."

[4] The next question is whether this is an existing easement or whether it must be deemed to have been lost by nonuser. There is not a scintilla of evidence in the case of the acceptance by the public of this eight-rod strip for a highway nor of the establishment of such a highway nor of the user as a highway, of the eight-rod strip, in any manner, shape, or form; and, assuming a public easement to have been created by the patents themselves, it is a well-·settled rule that such an easement in a highway may be lost by nonuser, an extinguishment of it by abandonment for a long time being presumed. Wash-.burn's Easements and Servitudes (4th Ed.) p. 717.

[5] The case at bar is not to be treated as one of an encroachment upon a .highway which may not be permitted to destroy the public's right therein,

but rather as one of a contemplated highway never accepted or used. More-over, the state intended by its own sovereign act to abandon its easement as reserved in the patents. The colonial statutes (chapter 131 of the Laws of 1703, and chapter 144 of the Laws of 1704) created the "great road" in Richmond county, defining its breadth as four rods, at the same time declaring the "lesser roads" in said county to be three rods in breadth, with the proviso that the three-rod breadth of the lesser roads was not to apply to roads through the lands of persons whose patents required the allowance of a "greater breadth for roads and highways." Notwithstanding the "greater breadth" of roads here specified as projected through patented lands, they were none the less "lesser roads," within the meaning of these colonial statutes, as the context of the act shows that but one "great road" was intended in Richmond county; all others being defined as "lesser roads." The colonial statute of 1719 (chapter 372), after reciting the preceding acts, including the proviso as to the greater width of roads which ran through lands of persons who by their patents were obliged to allow a greater breadth than the three rods, further recites that this proviso concerning the lesser roads has occasioned "several unhappy differences * * * amongst the inhabitants." The act then continues that to prevent any further differences that shall or may arise in or about the lesser roads in said counties, "that the said Exception, Provisoe or Clause in the said Act mentioned for the breadth of the lesser roads in the County shall be and is hereby repealed, made null, void and of none Effect. And the said Lesser Roads in the County aforesaid shall be of the breadth of three Rodd and no more, anything in said act or any other act contained to the Contrary in any wise notwithstanding."

It is clear, therefore, to my mind, that the colonial statute last referred to reduced the width of the contemplated highway in question from eight rods to three rods, and it must be held that as to the remaining five rods there was an abandonment by the sovereign of its right of user, and that the same reverted to the patentee. Blackman v. Riley, 138 N. Y. 327, 328, 34 N. E. 214; Bradley v. Crane, 201 N. Y. 22, 94 N. E. 359.

[6] The evidence, while somewhat meager, would tend to show that the laying out of the road of any width by the waterside in Richmond county and adjacent to the premises in question would have been quite impracticable, owing to the propinquity of an embankment some 40 feet or thereabouts in height. And so it is found that in 1705 there was duly laid out, by legal proceedings, duly recorded, a public highway, three rods wide, to be measured "from the edge of the bank." We find that these proceedings were supplemented in 1774 and 1802 by more specific descriptions and by a reduction of the width of the road to 2½ rods, but still retaining its location upon this bank. That road, known to the inhabitants from the earliest memory of those now living as well as historically, has always been called the Shore Road, and by present public records under the name of "Richmond Terrace," a handsome and modern street, as its physical presence clearly shows. In Blackman v. Riley, supra, the court at page 329 N. Y., at page 216 of 34 N. E., say: "This may be, perhaps, regarded as slight and unsatisfactory evidence as to the actual width of the road, and we may admit it would be if it were applied to matters of recent occurrence. We must continually bear in mind that we are inquiring as to matters which happened more than a century ago, and we must be content to rest upon such slight evidence as survives those times." Applying the view so expressed by the Court of Appeals to the case at bar, the conclusion is formed that the "Shore Road" or "Richmond Terrace" constitutes the public easement in the patented lands hereinbefore referred to. This conclusion is properly derivable from the fact that no highway other than this was ever known to exist within the area of the patented lands, paralleling or contiguous to the waterside; that it was the only practicable or feasible land "by the waterside" for the location of the roadway; that the public has acquiesced in that situation for over two centuries; that the patentees and their successors have built upon and used, as private owners may, with the acquiescence of the state, the land between Richmond Terrace and the high-water line or waterside, and, it seems to me, that, if there ever was a case of legal presumption of an abandonment of a highway by the public acceptance and adoption of another and more convenient con-

tiguous highway, the case at bar is such. In fact, had the eight-rod strip ever been used as a highway, its abandonment by presumption, under the circumstances here existing, should be found as a matter of fact. If a highway has been abandoned for a great length of time, and another road has been opened, traveled by the public, and recognized by the public authorities, an abandonment may be presumed. "The acceptance of the new way in place of the old may be regarded as conclusive of the abandonment of the old." Jones on Easements, § 538, citing cases. The complaint must be dismissed, with judgment for the defendant upon his counterclaim decreeing specific performance, with costs. Findings in accordance with the foregoing may be submitted.

Argued before JENKS, P. J., and THOMAS, CAR, RICH, and PUTNAM, JJ.

D. Eugene Blankenhorn, of Jersey City, N. J., for appellant.
James E. Kelly, of New York City, for respondent.

PER CURIAM. Judgment affirmed, with costs, on the opinion of Mr. Justice Kapper, at Special Term. All concur.

---

### JOACHIMSTHAL v. U. S. METAL & MFG. CO.

(Supreme Court, Appellate Term, First Department. June 14, 1915.)

SALES ⬥347—RECOVERY OF PRICE—NONPERFORMANCE BY SELLER.

Where, in an action for the price of "bundled roofing free from tin and galvanized iron," which was rejected by defendant, the evidence showed that the roofing rejected was not free from tin and galvanized iron, plaintiff could not recover, in the absence of proof that he signed the contract through fraud, mistake, or misapprehension, even though his controverted evidence that there was no such roofing as that described in the contract to be accepted is true.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 962–972; Dec. Dig. ⬥347.]

Appeal from Municipal Court, Borough of Manhattan, First District.

Action by Julius Joachimsthal against the U. S. Metal & Manufacturing Company. Judgment for plaintiff, and defendant appeals. Reversed, and new trial ordered.

Argued May term, 1915, before GUY, LEHMAN, and WHITAKER, JJ.

Hardy, Stancliffe & Whitaker, of New York City (Henry M. Carpenter, of New York City, of counsel), for appellant.
M. A. Lesser, of New York City, for respondent.

WHITAKER, J.. The complaint alleges that in November, 1914, plaintiff agreed to sell to defendant and defendant agreed to purchase of plaintiff one car load of "bundled roofing tin" at the agreed price of $2.50 per ton, f. o. b. Newark, N. J.; that defendant promised to pay for said goods 75 per cent. cash on receipt of bill of lading with invoice attached, balance in 30 days; that plaintiff shipped and delivered to defendant a car containing the goods, and sent to defendant a bill of lad-